**In re: INITIAL PUBLIC OFFERING
SECURITIES LITIGATION**

**This Document Relates to All Cases.**

**No. 21MC92(SAS).**

United States District Court,
S.D. New York.

June 11, 2007.

Theodore A. Bechtold, Brooklyn, New York, for Movants.

Melvyn I. Weiss, Robert A. Wallner, Ariana J. Tadler, Peter Safirstein, Neil Fraser, Milberg Weiss & Bershad LLP, New York, NY, Stanley Bernstein, Rebecca M. Katz, Bernstein Liebhard & Lifshitz, LLP, New York, NY, for Plaintiffs.

Gandolfo V. DiBlasi, Penny Shane, Sullivan & Cromwell, New York, NY, for Defendants (Underwriters).

Jack C. Auspitz, Morrison & Foerster LLP, New York, NY, for Defendants (Issuers).

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This Order addresses two motions. *First*, various individuals ("Movants") move to intervene as plaintiffs in certain of the coordinated actions in the above-captioned litigation for the sole purpose of seeking to remove Milberg Weiss & Bershad LLP ("Milberg Weiss"), as well as other members of the IPO Executive Committee, as Lead Counsel in this litigation (the "motion to intervene"). *Second*, Milberg Weiss moves for a protective order barring Theodore A. Bechtold, Esq. ("Bechtold"), counsel for Movants, from issuing any class-wide communications without prior approval by the Court and to preclude Bechtold from disclosing attorney work product (the "motion for a protective order"). For the reasons set forth below, the motion to intervene is denied and the motion for a protective order is granted in part and denied in part.

## I. BACKGROUND

### A. Indictment of Milberg Weiss

Milberg Weiss is the chair of the six-firm IPO Executive Committee that has been representing plaintiffs in this action for the last several years. On May 18, 2006, a federal grand jury in California returned an indictment against Milberg Weiss and two of its named partners. The indictment alleges, *inter alia*, that certain fees awarded to the firm were improperly shared with certain plaintiffs. Of the two named partners, one is on a leave of absence and the other has resigned from the firm. Milberg Weiss denies and is defending against the allegations in the indictment. In the year following the indictment, no lead plaintiff in any of these 310 coordinated actions has sought to remove Milberg Weiss as Lead Counsel.

### B. Bechtold

In January 2001, Bechtold was hired as an associate by Stull, Stull & Brody ("SS & B"), an IPO Executive Committee firm. During his employment at SS & B, Bechtold was assigned to work on the IPO Securities Litigation. Bechtold was fired for cause by SS & B after he sent an *ex parte* communication to the Court on September 29, 2005, which contained allegations regarding the discovery conduct of the IPO Executive Committee.[1] Bechtold subsequently sued all of the members of the IPO Executive Committee in New York State Supreme Court for wrongful termination seeking $10 million in compensatory and $250 million in punitive damages, which was dismissed in part on a motion to dismiss and in full after he defaulted.

Bechtold then began to solicit potential class members to intervene in the litigation as his clients. In March and April 2007, Bechtold issued a series of press releases:

- On March 27, 2007, Bechtold issued a press release stating that the was "in-

---

1. The allegations in Bechtold's *ex parte* letter were referred to a Special Master, and based on his investigation, the Court concluded no further inquiry was necessary.

vestigating possible violations of duties owed to class members in the IPO Securities Litigation by Milberg Weiss & Bershad and Bernstein Liebhard Lifshitz and other IPO Securities Litigation Executive Committee firms." In that press release Bechtold encouraged people who received materials relating to the IPO litigation in particular or from Milberg Weiss in general to contact him "to discuss [their] legal rights." [2]

- On April 11, 2007, Bechtold issued a press release stating that "counsel will intervene on behalf of class members to remove Milberg Weiss from the case." The press release also claims that Milberg Weiss failed to charge all culpable parties in the litigation, including parties named in the prospectus or "otherwise identified by counsel as participants in the manipulation." [3]

- On April 19, 2007, Bechtold issued another press release that announced that Bechtold had filed the motion to intervene to remove Milberg Weiss. [4]

- On April 28, 2007, Bechtold issued a press release stating that "[c]lass members in any case where Milberg Weiss & Bershad serves as lead counsel are encouraged to contact Theodore A. Bechtold, Esq." [5]

## C. Procedural History

In or about in February 2007, Bechtold submitted a series of letters to the Court regarding his desire to seek the removal of Milberg Weiss. After Bechtold had satisfied the Court that he had clients with an interest in this litigation, the Court set a briefing schedule for a formal motion to intervene by Bechtold and for a motion for a protective order requested by Milberg Weiss. As per that schedule, on April 30, 2007, Milberg Weiss made its motion for a protective order. Bechtold responded on May 16, 2007, and Milberg Weiss submitted its reply on May 24, 2007. Bechtold did not submit his moving papers on the motion to intervene on April 30, 2007. Nevertheless, Milberg Weiss and the IPO Executive Committee submitted opposition briefs according to the schedule on May 14, 2007, responding to the February submissions regarding the removal of Lead Counsel. Bechtold finally submitted a belated "formal" motion on behalf of Movants to intervene on May 16, 2007. The Court later ordered Bechtold to submit any reply on or before June 6, 2007. The Court received Bechtold's reply on June 8, 2007.

## II. LEGAL STANDARD

### A. Permissive Intervention

■ Permissive intervention is governed by Federal Rule of Civil Procedure 24(b), which provides, in pertinent part:

Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.[6]

A motion for permissive intervention must

---

**2.** Declaration of Neil Fraser, of Milberg Weiss, in Support of Memorandum of Law in Opposition to Motion to Intervene and Remove Milberg Weiss & Bershad as Lead Counsel ("Fraser Decl.") Exhibit ("Ex.") 5.

**3.** *Id.*

**4.** *See id.*

**5.** *Id.* Ex. 6.

**6.** Fed.R.Civ.P. 24(b).

be timely.[7] "A district court has broad discretion in assessing the timeliness of a motion to intervene, which 'defies precise definition.'"[8] In analyzing timeliness, "[t]he court may consider, *inter alia*, the following factors: (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention."[9] "Generally, the court's analysis must take into consideration the totality of the circumstances."[10] However, "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"[11]

### B. Restrictions on Class–Wide Communications

District courts have broad authority to supervise class actions.[12] Federal Rule of Civil Procedure 23(d) provides that the court may issue appropriate orders, *inter alia*, "(2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action ... [and] (5) dealing with similar procedural matters."[13]

In *Gulf Oil Company v. Bernard*, the United States Supreme Court held that "because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."[14] However, "[t]he *Gulf Oil* Court specified that any order that limited communications between parties and *potential class members* 'should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.'"[15] "A court making this assessment should look to further the policies embodied in Rule 23, while limiting speech as little as possible, consistent with the rights of the parties under the circum-

---

7.  *See NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied."); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 391 (2d Cir. 2006); *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir.1996).

8.  *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir.2000) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994)).

9.  *Id.*

10. *Id. Accord NAACP*, 413 U.S. at 365–66, 93 S.Ct. 2591 ("Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely disposi-

tive. Timeliness is to be determined from all the circumstances." (footnote omitted)).

11. *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R.Civ.P. 24(b)(2)).

12. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

13. Fed.R.Civ.P. 23(d). The Court's power to restrict communications between parties and putative class members applies even before a class is certified. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237, 252–53 (S.D.N.Y.2005) (collecting cases).

14. 452 U.S. at 100, 101 S.Ct. 2193.

15. *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 22701241, at *8 (S.D.N.Y. Nov. 17, 2003) (emphasis added) (quoting *Gulf Oil*, 452 U.S. at 101, 101 S.Ct. 2193).

stances."[16] Restraints on communications to class members have the potential to raise First Amendment concerns and courts must be attentive to whether "the restraint is justified by the likelihood of serious abuses."[17]

## III. DISCUSSION

### A. Permissive Intervention to Remove Milberg Weiss and the IPO Executive Committee

■ Although the motion to intervene is brought more than one year after the indictment of Milberg Weiss, I need not address whether the motion is timely under Rule 24(b) because I find that intervention would "unduly delay or prejudice the adjudication of the rights of the original parties."[18] Milberg Weiss and the other IPO Executive Committee firms have spent years prosecuting this case and funding the litigations to the tune of several million dollars in actual expenses and over fifty million dollars in fees. They have conducted extensive discovery, and successfully engaged in extensive settlement negotiations with the Issuers. Collectively, they now have a vast institutional knowledge of the case. To remove Milberg Weiss and the other IPO Executive Committee firms at this late stage would eliminate that acquired intellectual capital and require new counsel to start again, to the detriment of the advancement of this case and all of the putative class members.

Milberg Weiss and the IPO Executive Committee have been found to, and continue to, adequately represent the class. Indeed, no lead plaintiff has moved to remove any of the firms from their position as Lead Counsel. Movants attack the representation based on the assertion that mounting a defense to the indictment burdens and distracts Milberg Weiss from this case.[19] There simply is no evidence that Milberg Weiss's representation has suffered at all as a result of its defense or that it will suffer in the future. Nor is there any evidence that the IPO Executive Committee's representation as a whole will be inadequate as a result.

Movants also make a conclusory accusation of a conflict arising out of the representation of an unspecified plaintiff who is alleged to be a possible witness for the prosecution against Milberg Weiss.[20] This is mere speculation and is without any support in the record. Likewise, movants

16. *Id.* (citing *Gulf Oil*, 452 U.S. at 102, 101 S.Ct. 2193; *Rossini v. Ogilvy & Mather*, 798 F.2d 590, 601–02 (2d Cir.1986)). *See also id.* ("One of the policies of Rule 23 that has been specifically identified by the Second Circuit is the protection of class members from 'misleading communications from the parties or their counsel.'" (quoting *Erhardt v. Prudential Group*, 629 F.2d 843, 846 (2d Cir.1980))).

17. *Gulf Oil*, 452 U.S. at 104, 101 S.Ct. 2193. However, "[s]olicitations for legal services that are motivated by economic considerations constitute commercial speech." *In re WorldCom*, 2003 WL 22701241, at *8 (citing *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988); *Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir.2002)). "The First Amendment does not protect misleading commercial speech, which may be prohibited by the government if it is more likely to deceive the public than to inform it." *Id.* (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–64, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Anderson*, 294 F.3d at 461).

18. Fed.R.Civ.P. 24(b).

19. Clearly, this argument is irrelevant to the remaining law firms making up the IPO Executive Committee.

20. Once again, this allegation does not apply to the remaining members of the IPO Executive Committee.

make the conclusory and speculative accusations that there are "suspect lead plaintiffs used in many cases by these firms" and that there are "[p]ossible illegal payments or other improper arrangements with lead [p]laintiffs."[21] I will not credit these unsupported accusations. This Court takes seriously the presumption of innocence afforded to defendants until proven guilty. I will not disqualify and remove Milberg Weiss solely on the basis of the allegations in the indictment. To do so would undoubtedly prejudice the rights of the putative class members, who have been capably represented by the IPO Executive Committee for years and who the Court has no reason to doubt will continue to be adequately represented by those firms.

By contrast, Movants are not prejudiced by the Court's refusal to remove the IPO Executive Committee firms. Movants still have the right to pursue their individual claims with counsel of their choice.

In sum, I find that the circumstances of this case weigh in favor of denying the motion to intervene and refusing to remove Milberg Weiss and any of the IPO Executive Committee firms.[22]

---

21. Bechtold Motion ¶ 4.

22. Many courts have refused to remove Milberg Weiss based on the indictment. *See, e.g., In re Novastar Fin. Sec. Litig.*, No. 04–0330, 2007 WL 465649, at *4 (W.D.Mo. Feb.8, 2007) ("[R]emoval of Milberg Weiss as co-lead counsel would not only harm the class, but prematurely punish the firm for unproven allegations. The Court does not believe it is [ ] appropriate to consider disqualification of the firm unless and until the claims have been substantiated."); *In re Merck & Co., Inc. Sec. Litig.*, No. 05–CV–2367, Docket Entry # 196, Hearing Tr. at 13–14 (D.N.J. Jan. 25, 2007); *In re Lord Abbett Mut. Funds Fee Litig.*, No. 04–CV–0559, Docket Entry # 127, Order at 1 (D.N.J. Dec. 1, 2006); *In re Williams Sec. Litig.*, No. 02–CV–72 (N.D.Okla. July 19, 2006); *Simon v. KPMG LLP*, No. 05–CV–3189, Docket Entry # 166, Order at 19 (D.N.J. June 2, 2006); *Schoenbaum v. E.I. Dupont de Nemours & Co.*, No. 4:05–CV–1108, Docket Entry # 135, Hearing Tr. at 6 (E.D.Mo. May 24, 2006); *Sollins v. Alexander*, No. 601272/2006, 2006 N.Y. Misc. LEXIS 2889, at *10 (Sup.Ct.N.Y.Co. July 13, 2006). *But see Siemers v. Wells Fargo & Co.*, No. C 05–04518, Docket Entry # 98, Orders dated June 8, 2006 and June 30, 2006 (N.D.Cal.) (ordering Lead Plaintiff to consult with a lawyer not affiliated with Milberg Weiss about whether Milberg Weiss should continue to represent him and the class, and approving Lead Plaintiff's decision to replace Lead Counsel); *In re Organogenesis Sec. Litig.*, No. 04–10027, 2007 WL 776425 (D.Mass. Mar.15, 2007) (finding that Milberg Weiss was not adequate Lead Counsel, giving significant weight to the fact that Milberg Weiss was serving as sole Lead Counsel, and that one of the named indicted partners was involved in the case along with certain other case-specific circumstances, rather than based on the indictment itself, the existence of which the court found was in "equipose" with Milberg Weiss's track record in other cases and the presumption of innocence); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 466 F.Supp.2d 364 (D.Me.2006) (removing Milberg Weiss as vice-chair of the plaintiff's executive committee); *In re Medtronic, Inc. Implantable Defibrillator Prod. Liability Litig.*, 434 F.Supp.2d 729 (D.Minn.2006) (removing Milberg Weiss as counsel for the MDL case's transferee plaintiffs). Some courts have denied motions to appoint Milberg Weiss as Lead Counsel, as opposed to removing the firm, which occurs at a much earlier stage than that presented here. *See, e.g., Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 363–64 (E.D.Mich.2006); *In re General Elec. ERISA Litig.*, No. 06–CV–315, Docket Entry # 33, Order at 4 (N.D.N.Y. Aug. 3, 2006); *In re Chaparral Res., Inc. S'holders Litig.*, C.A. No.2001–N, Hearing (Del. Ch. May 17, 2006). Still other courts have continued to appoint Milberg Weiss as Lead Counsel after the indictment. *See, e.g., In re Diebold Sec. Litig.*, No. 5:05–CV–2873, 2006 WL 3023033 (N.D.Ohio Oct.20, 2006); *In re Martek Biosciences Corp. Sec. Litig.*, No. MJG 05–1224, Docket Entry # 63, Order at 2 (D.Md. Sept. 21, 2006); *In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610, 2006 WL 2020947, at *3 n. 2 (S.D.N.Y. July 13, 2006); *Welmon v. Chicago Bridge & Iron Co.*, No. 06–CV–1283 (S.D.N.Y. June 19, 2006).

## B. Protective Order

### 1. Class–Wide Communications

 Based on Bechtold's history of personal animus against the IPO Executive Committee firms, his conduct in this litigation, including the *ex parte* letter to the Court, and the various press releases he has issued relating to this litigation and to Milberg Weiss, that there is more than sufficient justification for a minimal limitation on Bechtold's class-wide communications in order to protect the rights of the parties.[23] Accordingly, it is hereby ordered that before Bechtold may issue any class-wide communication or press release, he must submit to the Court a copy of the communication for *in camera* review. Upon that review, if the Court has reason to believe that the communication may disclose attorney work product, the Court will then provide a copy of the communication to the IPO Executive Committee for comment.

### 2. Disclosure of Attorney Work Product

There is insufficient evidence at this time that Bechtold has disclosed attorney work product in any of his press releases or otherwise, and the Court will not issue any prospective protective order on this point. It should be noted, however, that all attorneys, including Bechtold, have a duty not to disclose attorney work product. Moreover, Bechtold, like all attorneys that have worked on this case, must also continue to comply with the terms of the stipulated protective order entered in this litigation.

## IV. CONCLUSION

For the reasons discussed above, the motion to intervene is denied and the mo-

tion for a protective order is granted in part and denied in part. The Clerk of the Court is directed to close these motions.

SO ORDERED.

---

**23.** Given that a substantial portion of these communications contain solicitations for clients, these press releases are likely com-

mercial speech and are not afforded the highest level of First Amendment protection.