Patricia SHEEHAN, Elizabeth Henoch, and Kayhan Hellriegel, on Behalf of Themselves and All Others Similarly Situated, Appellants,

v.

PUROLATOR, INC. and Purolator Courier Corp., Appellees.

No. 377, Docket 87–7540.

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1987.

Decided Feb. 12, 1988.

Judith P. Vladeck, New York City (Joseph J. Garcia, Laura S. Schnell, and Vladeck, Waldman, Elias & Engelhard, New York City, on the brief), for appellants.

Colleen McMahon, New York City (Morris B. Abram, Jay Cohen, Diana Hassel, and Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for appellees.

Before TIMBERS, MESKILL and KEARSE, Circuit Judges.

TIMBERS, Circuit Judge:

Patricia Sheehan and Elizabeth Henoch appeal from judgments entered after a bench trial in the Eastern District of New York, I. Leo Glasser, District Judge, denying respectively class certification (December 26, 1984) and appellants' individual claims of sex discrimination in employment (June 2, 1987). 103 F.R.D. 641.

The action was commenced under Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e *et seq.* (1982).

On appeal, appellants claim that the court erred in denying class certification and in denying their individual claims. They raise a number of separate claims of error, including the following: that the court improperly evaluated their statistical evidence; that it erroneously required affidavits from class members; that it ignored probative evidence of discrimination; and that it failed to consider the alleged discriminatory atmosphere at the company.

We hold that the court's findings were not clearly erroneous. We affirm.

## I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellees Purolator Courier Corp. ("Courier") and its parent, Purolator, Inc. (now defunct), provide pickup and overnight delivery of materials by ground and air throughout the United States. At all relevant times, Courier had corporate headquarters in New Hyde Park, New York and more than 200 offices, terminals and garages across the country (collectively referred to as "the field"). Courier employed over 10,000 persons, including approximately 1,100 salaried (exempt) employees, on a full or part-time basis.[1]

Appellants, who held salaried positions with Courier, collectively alleged in their complaint filed February 19, 1982 that appellees engaged in a pattern or practice of discrimination against their female employees in job assignment, pay and fringe benefits, promotion, and transfer; and that they maintained and condoned a working environment of intimidation and sexual harassment of female employees. Appellants also alleged that appellees retaliated against female employees who objected to the discriminatory policies and practices. Appellants sought class certification, injunctive relief and damages.

Backing up for a moment, Sheehan was hired in December 1971 as an office manager at Courier's corporate headquarters at a salary of $12,000 per year. After receiving

---

**1.** Since the trial, Courier has been acquired by and now operates as a subsidiary of Emery Air Freight Corp.

several salary increases, she was promoted to Staff Vice President in charge of purchasing and office services at a salary of $28,000 per year. In January 1981, she and other women at Courier filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging class-wide discrimination.

In March 1981, Courier's new president implemented a company-wide reorganization which included consolidating the Purchasing Department into the Transportation Department. Sheila Casey, a Courier Staff Vice President with more than twenty years tenure, became Corporate Vice President in charge of all purchasing, a newly created position. Sheehan at that time was to report to Casey, who in turn was to report to Paul Wolfrum, an officer of Courier. Sheehan retained her title, continued to coordinate office supply purchases, and was asked to take on added responsibilities. Courier asserts that, after Sheehan was told about the reorganization, she became uncooperative and contentious and frequently was absent or late. She filed a second charge with the EEOC, and then commenced the instant action.[2]

Sheehan claims that top management unlawfully retaliated against her for filing a discrimination claim, thus goading her into insubordination. Sheehan frequently complained that after the reorganization she did not know what her job duties were. After repeated attempts to clarify her duties, Wolfrum and Casey met with her on August 5, 1981. After Sheehan left the meeting twice, Wolfrum told her to return or face termination. She replied, "Then I am terminated." Courier fired her for cause and denied severance benefits.

Henoch was hired by Courier as a secretary in 1967. From then until March 1983, she worked in Courier's legal department at corporate headquarters. A non-lawyer, she performed para-professional duties, including preparing and filing with the Interstate Commerce Commission ("ICC") Courier's applications for interstate motor carrier operation authority and interstate tariffs. She also prepared protest forms for challenging the applications for motor carrier operating authority filed by the company's competitors. She received a number of staff position promotions, eventually becoming Staff Vice President. She was elected Assistant Corporate Secretary in 1972 and became the highest ranking non-lawyer in the legal department. In 1982 she was earning more than $38,000 per year.

Henoch obtained an ICC practitioner's license. Shortly thereafter, around 1978, massive federal deregulation occurred in the trucking industry. Henoch's duties were changed to encompass almost exclusively tariff work and her position was transferred to another department. She claims that this was a demotion resulting from sex discrimination by her supervisor, General Counsel John Delany. Henoch's job performance declined markedly. She filed charges with the EEOC on or about January 19, 1981 alleging employment discrimination. Courier asserts that changes in the regulatory environment eliminated many of Henoch's former duties. After Courier and its parent merged and moved to a consolidated headquarters in 1984, Henoch was named Director of Tariffs and Regulatory Compliance. She testified that her status improved after that reorganization.

Following our remand in 1981[3] and consolidation of the separate cases of Sheehan and Henoch,[4] they moved for class certification. The court denied certification. *Sheehan v. Purolator, Inc.*, 103 F.R.D. 641 (E.D.N.Y.1984). The court analyzed the

---

**2.** Her motion for preliminary injunctive relief was denied. *Sheehan v. Purolator Courier Corp.*, 25 Fair Empl. Prac. Cas. (BNA) 1342 (E.D.N.Y.1981). The court dismissed her complaint for lack of subject matter jurisdiction, on the ground that she had failed to obtain a requisite "right to sue" letter from the EEOC. We reversed. *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2 Cir.1981).

**3.** *Supra* note 2.

**4.** A third plaintiff—Kayhan Hellriegel—who is not involved in the instant appeal, had filed discrimination charges against Courier on or about January 19, 1981. Her case also was involved in the consolidation and class action.

case as one of disparate impact, requiring proof of discriminatory motive. *Id.* at 645. This finding has not been challenged on appeal. The court denied class certification on two independent grounds: (1) appellants did not establish the existence of an aggrieved class; and (2) appellants failed to meet typicality requirements.[5]

Subsequently, on May 27, 1987, after a bench trial, the court dismissed all of appellants' sex discrimination claims on the merits.

This appeal from the court's 1984 and 1987 judgments followed.

Appellants claim that the district court erred in denying class certification and in denying their sex discrimination claims. Specifically, they claim that the court erred (1) in improperly evaluating statistical evidence; (2) in requiring affidavits from class members; (3) in ignoring probative evidence of discrimination; and (4) in failing to consider the alleged discriminatory atmosphere and sex-biased attitude of Courier management.

### II.

We turn first to the claim that the district court erroneously denied class certification in its 1984 judgment.

The court held that the statistics submitted by appellants to establish the existence of an aggrieved class failed to withstand scrutiny. The court found that the statistics comparing job titles, salaries and fringe benefits received by exempt male and female employees at Courier did not provide relevant comparisons of males and females with the same qualifications and experience, nor did the statistics alone indicate that other female employees felt aggrieved.

Appellants also submitted complaints by 56 employees, other than the named plaintiffs, alleging unequal treatment, harassment or retaliation. Courier challenged the relevance of all but one of these complaints. Based on appellants' failure to rebut the challenges, the court found that

this evidence was of ambiguous probativeness. Accordingly, the court held that appellants failed to provide sufficient affidavits necessary to flesh out the statistics. The court further held that, although appellants suggested this deficiency was caused by fear of retaliation, on balance, the requirements of Fed.R.Civ.P. 23 took priority.

Finally, the court held that the named plaintiffs were inadequate class representatives.

Since we affirm the denial of class certification on the ground of lack of class-wide proof of an aggrieved class, we believe it is neither necessary nor appropriate to reach the question whether Sheehan and Henoch were inadequate class representatives.

With this summary of the court's class action decision in mind, we shall examine the evidence in support of that decision.

At trial, appellants relied heavily on their regression analysis, which showed wage disparities between exempt men and women employees, to prove the existence of a certifiable class. They challenge the district court's holding that their statistics did not, by themselves, establish the existence of an aggrieved class of female employees. They claim that such a determination flies in the face of Supreme Court precedent that employment discrimination can be established by statistical proof, citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), and *Bazemore v. Friday*, 106 S.Ct. 3000 (1986) (per curiam). We disagree.

The Supreme Court in *Teamsters* recognized the importance "of using anecdotal evidence, when available, to bring 'the cold numbers convincingly to life.'" *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 604 (2 Cir.1986) (citing *Teamsters, supra*, 431 U.S. at 339). "In evaluating all of the evidence in a discrimination case, a district court may properly consider the quality of any anecdotal evidence *or the absence of such evidence.*" 798 F.2d at 604 (emphasis added). As the Court reaffirmed in *Baze-*

---

**5.** After the district court denied class certification, but before the trial began, Hellriegel set-

tled her claims. Accordingly, she is not involved in the instant appeal.

*more,* "plaintiffs must 'establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" 106 S.Ct. at 3008 (quoting *Teamsters, supra,* 431 U.S. at 336). The Court observed, however, that the omission of variables from a regression analysis will affect the analysis' probativeness, but not its admissibility. *Id.* at 3009. Although a regression analysis including less than "all measurable variables" may serve to prove a plaintiff's case, whether it does so "will depend ... on the factual context of each case in light of all the evidence presented by both the plaintiff and the defendant." *Id.*

The district court here received in evidence appellants' regression analysis, but it found it to be flawed. The court was not clearly erroneous in so finding. The regression analysis did not take into account various relevant non-discriminatory factors such as education and prior work experience. Appellees introduced evidence that these factors indeed could explain the disparities. Appellants also introduced statistics comparing the job titles, salaries and fringe benefits received by exempt male and female employees. These statistics were even less probative than the regression analysis had been. There was no control for non-discriminatory factors. There were no distinctions for education, prior job history or job level.

Appellants adduced only a limited amount of other probative evidence to support their claims. Upon close scrutiny, the complaints introduced by appellants had little probative value. Appellees asserted that only eight of the 56 complaints submitted by appellants were by members of the proposed class of exempt employees; of those eight, only five resulted in formal complaints filed with governmental agencies; one of the five complaints was filed by a male employee and another was filed before the earliest date for inclusion in the proposed class. Appellees asserted that, of the three remaining complaints, two allegedly were dismissed for lack of probable cause to sustain the allegation of employment discrimination. We think it is signifi-cant that appellants did not seek to rebut this analysis.

Under these circumstances, we hold that the court was not clearly erroneous in concluding that only one such affidavit was relevant; and that submitting an affidavit from only one aggrieved employee, other than the named plaintiffs, was insufficient to establish a class of aggrieved individuals.

Appellants also introduced Transportation Department manuals (no longer in effect) containing arguably discriminatory statements. Evidence was adduced that those manuals had no applicability whatsoever to personnel decisions at Courier's corporate headquarters where appellants were employed. The personnel policy in effect at headquarters throughout the relevant period, as well as the employee handbook, reflected non-discriminatory policies. While we do not condone such manuals, there was evidence from which the factfinder reasonably could conclude that they were not in effect at corporate headquarters.

In *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147 (1982), the Supreme Court held that the prerequisites to a class action under Rule 23(a) could not be presumed. *See Rossini, supra,* 798 F.2d at 597–98. The Court directed that there be a "rigorous analysis" to determine whether Rule 23(a) has been satisfied. *Falcon, supra,* 457 U.S. at 161. As we stated in *Rossini,* "In the wake of *Falcon,* courts have been generally strict in their application of the Rule 23(a) criteria." *Rossini, supra,* 798 F.2d at 597.

Applying these guidelines, we hold that the district court was not clearly erroneous. As the Ninth Circuit stated, "by finding fault and infirmities in the statistical evidence presented, the district judge was neither evading her responsibility to examine the evidence, nor placing impossible burdens on the plaintiffs. The judge was simply unpersuaded." *Penk v. Oregon State Bd. of Higher Educ.,* 816 F.2d 458, 465 (9 Cir.1987) (footnote omitted). In short, the district court's findings in the

instant case that appellants' claims were not susceptible of class-wide proof should not be set aside since they certainly were " 'plausible in light of the record viewed in its entirety' ", the standard established by the Supreme Court. *Banco Nacional de Cuba v. Chemical Bank New York Trust Co.*, 822 F.2d 230, 240 (2 Cir.1987) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)).

### III.

This brings us to consideration of the district court's 1987 decision which rejected appellants' individual claims of sex discrimination.

Here again the court found unpersuasive the statistics showing salary disparities between exempt male and female employees for the same reasons set forth in its denial of class certification—non-discriminatory variables were omitted that explained the wage disparities and the male employees described were not truly comparable to either Sheehan or Henoch.

■ The court also found that appellants were not denied fringe benefits for non-discriminatory reasons. Their complaint centered on the denial of use of a company car. The court found that credible evidence established that both male and female employees whose work required business travel received use of a company car. Since the work of neither Sheehan nor Henoch required travel, their denial of the use of a company car did not constitute sex discrimination.

The court found that Sheehan's bonus depended on Courier's performance. Accordingly, that factor caused her bonus to fluctuate from year to year. As for Sheehan's claim of discriminatory denial of a transfer to "the field" and the alleged corresponding opportunities for increased salary and advancement, the court found such claim was without merit. The court stated that it could not credit Sheehan's testimony that in 1979 Courier's president told her that the company was male-oriented, particularly in light of his approval of her promotion. The court also found that Sheehan had not specified to John Nichols (her one-time supervisor) the precise position in the field that she wished to fill. Moreover, the court observed that transfers from headquarters to the field were rare, and as many women were transferred as men. The court found that Sheehan's claims of sexual harassment were time-barred, and the incidents alleged were too isolated to prove an abusive working environment. The court found that Sheehan refused to cooperate with Courier's legitimate operations and that her own behavior led to her termination. In short, her gender was irrelevant.

The court likewise rejected Henoch's individual claims of sex discrimination. The court found that the diminution of her duties resulted from deregulation and her status as a non-lawyer in the legal department. These factors also contributed to the company's failure to promote her after she became the highest ranking non-lawyer in the department. She also indicated no interest in being transferred to a department where advancement would be possible for someone in her position. Her decline in performance justified a refusal to promote her. The court found that Courier did not retaliate against her after she filed EEOC charges. Indeed, the court found that her title, salary and benefits were unchanged.

In a private, non-class action under Title VII, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff succeeds in making out a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id.* at 253 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). At that point, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253. The ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff. *Id.*

■ We hold that the court correctly concluded that appellants did not sustain their burden. If the trial court's findings are "plausible in light of the record", we must affirm, regardless of whether we as fact-finders would have weighed the evidence differently. *Banco Nacional de Cuba v. Chemical Bank New York Trust Co., supra,* 822 F.2d at 240. In light of all the evidence, we cannot say that the court was clearly erroneous. To the extent appellants may be said to have established a prima facie case, Courier articulated legitimate reasons for its treatment of appellants that were not proven pretextual. The court heard the evidence and made credibility findings—a function peculiarly within its province as the fact-finder.

As we have held in part II of this opinion, the court was not clearly erroneous in finding that appellants' statistics were insufficient, nor, as we also held above, do the Transportation Manuals introduced by appellants alter this holding. The court's finding that Sheehan and Henoch failed to demonstrate that their experience and skills were comparable to the male employees with whom they compared themselves is plausible in light of the record.

Appellants point to testimony of John Nichols, referred to above, and Providence Balzano, who, like Henoch, was supervised by Delany. Sheehan claims that the court was clearly erroneous in finding that she was not discriminatorily denied a transfer to the field based on Nichols' response to her request. Nichols testified, "I really didn't take it [opportunity to go into the field] seriously knowing that she had children as I did, and I didn't really think that she meant that she would want to relocate and why would she really think that she would be doing better out there than in the office."

Although arguably Sheehan's request for a transfer to the field was precise enough, in the context of Nichols' entire testimony as well as other evidence in the record, we hold that it was reasonable for the court to find that Sheehan was not denied a transfer because she was female. Sheehan's request for a transfer was motivated by dissatisfaction with her salary. Nichols testified that he counselled Sheehan against a transfer to the field because he doubted that she could earn more there than at corporate headquarters. Evidence was adduced that in fact salaries for employees at corporate headquarters were on the average higher than salaries for employees in the field and that such transfers were rare. Moreover, Nichols had recommended Sheehan for her promotion to Staff Vice President, lending credibility to appellees' claim that discrimination was not a factor.

■ Henoch claims that the court abused its discretion in refusing to admit Balzano's testimony. The proffered testimony was that Delany had refused to allow Balzano to set up a claims prevention department because he believed that women could not effectively supervise others. Balzano's testimony was excluded by the court on the ground that it was relevant only to the class claims and not to the individual claims. Even if the court erred in excluding Balzano's testimony, the error was harmless. Assuming that the testimony would prove Delany's sexist attitude, it still would not establish company policy at headquarters. There is no evidence in the record that proves a pattern of discrimination toward appellants or toward female employees generally.

■ The court's finding that use of company cars was determined by a legitimate non-discriminatory factor—jobs requiring business travel—certainly was reasonable in light of the evidence. The court's findings on the sexual harassment and retaliation claims also were plausible. Sheehan's claims of harassment were time-barred. Although Henoch proved that Delany, her supervisor, was abusive, the record showed that his temper was manifested indiscriminately toward men and women, even his superiors.

The record establishes that Sheehan's difficulties stemmed primarily from her own behavior and refusal to accept the

changes brought about by Courier's reorganization. Henoch's difficulties stemmed from changed circumstances in the industry, rendering her experience and skills much less valuable. Appellants' claims of a discriminatory atmosphere at Courier are equally unavailing. Neither the Transportation Department manuals nor Balzano's excluded testimony suffice as proof. We are not persuaded that there was evidence in the record showing a pattern of discrimination.

To summarize:

Viewing the evidence adduced by appellants in the context of the entire record, we decline to say that the judge's findings were clearly erroneous. He heard the evidence and made credibility determinations. He was there. We were not.

Affirmed.

Judge KEARSE filed a dissenting opinion.

KEARSE, Circuit Judge, dissenting:

With due respect to the majority's deference to the factfinding of the district court, I must dissent from the decision to affirm the judgment dismissing the individual claims of plaintiffs Patricia Sheehan and Elizabeth Henoch that Purolator Courier Corp. (the "Company") discriminated against them in the terms and conditions of their employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). In my view, the trial court excluded probative evidence on the ground that it was not relevant, apparently disregarded admitted evidence that showed gender discrimination, and made findings that are clearly erroneous.

In support of the contention that Henoch had been discriminated against on the basis of her sex, plaintiffs offered, *inter alia,* the testimony of Providence Balzano, a witness who, like Henoch, had been supervised by John Delany, the Company's Senior Vice President, Assistant Secretary, and General Counsel. The proffered testimony was that Delany had refused to allow Balzano to set up a claims prevention department, stating as the reason, "no one

would be respectful of a woman in that position." The trial court excluded the testimony on the ground that it was not relevant to Henoch's individual claim. Plainly this was error. Delany's statement unambiguously revealed a dispositive view that there were certain positions that women *qua* women should not occupy. His statement that "no one" would respect a woman in the given position may have reflected his own view, or it may have reflected either the views of the rest of management or his own belief as to the views of management. Whatever the source of the view stated by Delaney, however, the statement was surely relevant (as conceded by the Company at oral argument of this appeal) to whether gender was a factor in Delany's—and thus the Company's—treatment of Henoch.

There was also a substantial amount of evidence that was not excluded that supported the claims of discrimination, much of which was never adverted to by the trial court. For example, Duwain Weibe, a former manager at the Company, testified that he had repeatedly attempted to obtain competitive salaries for women. Top executives rebuffed his efforts, stating that any woman "probably [had] a husband working."

One of the most probative items of evidence concerned Sheehan's request to John Nichols, her supervisor, to consider her for transfer to a position in the "field." This request was not honored. Why? Nichols testified: "I really didn't take [her request] seriously knowing that she had children...." The district court, however, found that the reason Sheehan was not considered for a transfer was that she "did not tell John Nichols, Senior Vice President for Administration and her immediate supervisor, what position in the field she wished to fill." This finding is neither supported nor supportable. Nichols himself made no mention of such an explanation. The trial court made no mention of Nichols's actual explanation. In light of Nichols's own testimony that Sheehan's request was not taken seriously because she had children, the Company's argument that Sheehan was not considered because she

had not identified a specific position is an explanation that one would expect to see rejected by the factfinder as pretext.

The majority concedes that "arguably Sheehan's request for a transfer to the field was precise enough," *ante* at 105, but it constructs a different basis on which to "hold that it was reasonable for the court to find that Sheehan was not denied a transfer because she was female." The majority's view—which was not adopted by the trial court—is that Nichols did not consider Sheehan for transfer simply because he doubted that she could earn more money in a field position, and that gender could not have been a factor because Nichols had recommended Sheehan for her promotion to Staff Vice President. The majority's reconstruction rests on two inappropriate premises. First is the notion, which permeates the majority's defense of the decision below, that so long as an employer gives a female employee some opportunities, it may permissibly deny her other opportunities on the ground that she is a woman. *See, e.g., id.* at 104 (finding no discrimination on the basis of gender because president approved Sheehan's promotion (to a job she did not prefer)). This notion hardly reflects Title VII's goal of equal opportunity. Second, the majority's conclusion that "gender was irrelevant" in Nichols's refusal to consider Sheehan for a field position is illogical unless Nichols would also have refused to take seriously a transfer request by a man because the man had children. There is nothing in the record—or in experience—to support this supposition. To the contrary, the record makes clear that elsewhere in the Company, managers were given written instructions, signed by the Company's highest officers, to be wary of giving substantial responsibility to "women" with children; interviewers were instructed to determine how children would be taken care of while the "mother" worked.

Similarly, the majority finds no fault in the trial court's "state[ment] that it could not credit Sheehan's testimony that in 1979 Courier's president told her that the company was male-oriented," majority opinion *ante* at 104, notwithstanding the facts that

Sheehan's testimony was not contradicted by the president and was supported by documentary evidence. Thus, manuals of the Company's Transportation Department contained the following statements, among others:

—"The sex of the individual is more often related to job success than one might expect."

—"The sex of the employee is often related to turnover."

—"In the case of women applicants, the number and ages of children are important."

The majority dismisses these manuals (which it describes as containing "arguably discriminatory" statements) by stating that they had "no applicability whatsoever to personnel decisions at Courier's corporate headquarters where appellants were employed." Majority opinion *ante* at 103. Though the manuals may not have been technically applicable to corporate headquarters, they surely showed the attitudes of the corporate officers who signed them, and one of those officers was the Company's president. I am at a loss to understand how a trier of fact, if it noted the president's endorsement of these statements, could reasonably reject as incredible the uncontradicted testimony that the president had said the Company was male-oriented.

In finding, however, that the Company had not engaged in sex discrimination against these plaintiffs, the trial court did not mention any of the blatantly sexist written statements endorsed by the Company's top officers. Nor did it mention the testimony of Wiebe, or the testimony of Nichols that he dismissed Sheehan's transfer request because she had children, or other evidence that supported plaintiffs' claims that the Company denied them certain job opportunities because they were women. Ordinarily I would say that a trial court need not mention each piece of evidence it has considered. But where the trial judge has plainly erred by excluding some relevant proof of discrimination, thinking it was not relevant, I believe the reviewing court should be skeptical, rather

than imaginatively generous, in interpreting the trial judge's complete silence as to the considerable amount of evidence of gender bias that is in the record.

In sum, I, for one, am unable to conclude that the trial court's finding that the Company did not engage in discrimination against these plaintiffs on the basis of their sex was, in the words of *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), "plausible in light of the record viewed in its entirety."