**Lucy FARLEY and David Devoid, on behalf of themselves and all others similarly situated**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.**

**Civ. A. No. 88–127.**

United States District Court, D. Vermont.

March 9, 1992.

John J. McCullough, III, Vermont Legal Aid, Inc., Montpelier, Vt., for plaintiffs.

Christopher B. Baril, Asst. U.S. Atty., Rutland, Vt., for defendant.

## OPINION AND ORDER

COFFRIN, Senior District Judge.

On October 5, 1990, the Magistrate Judge issued a Report and Recommendation ("Report") on the issues of class certification and summary judgment in this matter, recommending the class be certified and summary judgment be entered for the plaintiffs. *See Farley v. Sullivan,* Civ. No. 88–127, slip op. (D.Vt. Oct. 5, 1990) (Niedermeier, Mag. J.). On October 23, 1990, the plaintiffs, Lucy Farley and David Devoid, filed their objections to the Report. ("Plaintiffs' Objections"). On December 4, 1990, the defendant, Louis Sullivan, Secretary of Health and Human Services (the "Secretary"), filed his objections to the Report. ("Secretary's Objections"). We adopt the Magistrate Judge's recommendations.

## BACKGROUND

In order to determine benefit levels for Supplemental Security Income ("SSI") recipients, the Secretary uses Retrospective Monthly Accounting ("RMA") procedures. The Secretary is authorized by statute to calculate benefit levels for a given recipient in a given month based on various factors, including the income level of the recipient either one or two months prior to the given month. *See* 42 U.S.C. § 1382(c)(1). The

Secretary has generally chosen to calculate benefit levels based on the recipients income level two months prior to the given month. 20 C.F.R. 416.420; Program Operation Manual System ("POMS") § SI 02005.060. For the first and second months of eligibility or re-eligibility, however, the income level two months prior is not a useful measure, since at that time the recipient by definition was not eligible for benefits. Therefore, the Secretary determines the first and second months' benefits based on the recipient's income in the first month. 20 C.F.R. § 416.420; 42 U.S.C. § 1382(c).

The result of this system is that if the recipient receives income of any kind in his or her first month of eligibility, the Secretary counts it as income received not only in the first month (for purposes of determining benefit levels in the first month), but also as income received for determining the level in the second month and in the third month. After the third month, there is a one-to-one correlation between income received and counted for determining benefit levels; the income in the second month of eligibility is used for determining the benefit level in the fourth month and so on.

Lucy Farley filed a class action complaint on June 10, 1988. Farley first became eligible for SSI in May, 1986. Although no longer employed on account of her disability, she received a final paycheck for $401.80 in that month.. Using the principles detailed above, the Secretary determined Farley's benefits for May, 1986 based on the amount of income she received in that month, which included her final paycheck of $401.80. The Secretary also considered Farley's final paycheck in his determination of Farley's benefits for June and July, 1986, even though she received no earned income in those months.

Plaintiff David Devoid intervened in this action on January 18, 1989. Devoid first became eligible for SSI in October, 1984. He was incarcerated in the Vermont correctional system on May 25, 1987, and as a result lost his eligibility for SSI. Upon his release in July, 1987, he again became eligible. The Secretary assigns a value to food and services received by applicants while in the custody of a correctional system and includes this in-kind income in calculating SSI benefit levels. Pursuant to this procedure, the Secretary used the in-kind income that Devoid received in July 1987 for calculating Devoid's benefits, not only for that month but also for August and September, 1987.

Farley and Devoid exhausted their administrative appeals within the Social Security Administration. Both applied for reconsideration of their benefit levels. They then requested and received hearings before an Administrative Law Judge ("ALJ"). In each case the ALJ determined the Social Security Administration had correctly determined benefit levels. Subsequently, the Appeals Council declined to review these decisions by the ALJs, thereby making them final decisions of the Secretary.

In their complaint, plaintiffs allege that the RMA procedures described in 20 C.F.R. § 416.420 and POMS § SI 02005.060, which base the first three months' benefit levels on nonrecurring income received only in the first month of eligibility violate the Social Security Act ("SSA") and the due process clause of the Fifth Amendment of the United States Constitution. Plaintiffs also complain that the Secretary's promulgation of POMS § SI 02005.060 violates the Administrative Procedure Act (the "APA").

Plaintiffs seek an injunction requiring the Secretary to change the method of computing benefits in the first three months so that a recipient's nonrecurring income in the first month is only charged against him or her once. They also seek identification by the Secretary of all Vermont SSI recipients who had nonrecurring income in their first month of eligibility and therefore have had their benefits calculated under this scheme in the manner complained of by plaintiffs, including recipients the Secretary is currently seeking money from on the basis that they were originally overpaid. Plaintiffs also ask that their benefits be properly redetermined. Finally, plaintiffs ask for court costs and attorneys' fees.

The Secretary filed a motion for judgment on the pleadings and for an order affirming his actions on February 28, 1990. Plaintiffs filed for class certification and for summary judgment on March 6, 1990.

The Magistrate Judge filed his Report on October 5, 1990. In his Report, the Magistrate Judge granted the motion for certification of the class described by the plaintiffs in their memorandum in support of their motion for class certification. He also found that all members of the class meet the jurisdictional requirements of 42 U.S.C. § 405(g). On the merits, the Magistrate Judge determined that plaintiffs are entitled to summary judgment on the issue of whether the RMA procedures promulgated by 20 C.F.R. § 416.420 and POMS § SI 02005.060 violate the language in 42 U.S.C. §§ 1382(c)(1) and 1382(c)(2) which calls for the Secretary to consider "other characteristics" and "other relevant circumstances" in determining benefit levels.

The Magistrate Judge also found that the plaintiffs lacked standing to contest 42 U.S.C. § 1382(c)(4), which section permits the Secretary to promulgate regulations varying the use of RMA procedures when it has "reliable information" permitting it to do so. Finally, having found that the Secretary's procedures violate the SSA, the Magistrate Judge declined to reach the issues of whether they also violated the Due Process Clause of the Fifth Amendment and the APA. The Magistrate Judge's Report was objected to by both parties. Pursuant to 28 U.S.C. § 636(b)(1), we now review the contested portions of the Report.

## DISCUSSION

### I. Standard of Review

The standard of review of Magistrate Judge actions on contested portions of dispositive matters is *de novo*. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The certification of a class and the grant of summary judgment are dispositive matters. 28 U.S.C. § 636(b)(1)(A). Therefore, the review of the contested portions of the Magistrate Judge's Report is *de novo*. This court may also review uncontested portions of the Report *sua sponte*. 28 U.S.C. § 636(b).

### II. Issues Subject to Review

Most of the Magistrate Judge's Report was contested by either the Secretary or the plaintiffs. The Secretary disputed the court's jurisdiction over the claims of the putative class members under 42 U.S.C. § 405(g) and the ability of the putative class to meet the numerosity requirements of Fed.R.Civ.P. 23. The Secretary also disputed the Magistrate Judge's decision to grant summary judgment to the plaintiffs on the issue of whether the Secretary was required to consider the nonrecurring nature of certain income received in the first month of eligibility as an "other characteristic[ ]" and "other relevant circumstance[ ]" in 42 U.S.C. §§ 1382(c)(1) and (c)(2). Plaintiffs Farley and Devoid filed objections regarding the Magistrate Judge's finding that they lacked standing to argue whether or not the Secretary is required to promulgate regulations instituting the "reliable information" exception of 42 U.S.C. § 1382(c)(4).

While it is customary to determine jurisdictional and class certification issues before turning to the issues raised on summary judgment, the Secretary does not dispute that the named plaintiffs are properly before this court under 42 U.S.C. § 405(g). Thus we may consider the summary judgment issues first. Ordering our analysis in this manner will simplify the discussion of the jurisdictional issues concerning the putative class.

### III. Summary Judgment Issues

The Secretary has moved for judgment on the pleadings. However, he also provided a transcript of the proceedings below as required by 42 U.S.C. § 405(g). Therefore, the Magistrate Judge was correct to treat the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(c); Report at 16–17. The plaintiffs have also moved for summary judgment. The standard for summary judgment is twofold. First, there must be no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). We are aware

of no dispute relating to any substantive fact in the litigation.[1] The second requirement is that the moving party be entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As we are treating both parties as having moved for summary judgment, the question reduces to whether either is entitled to judgment on the facts before this court.

Plaintiffs raise three types of claims: (1) claims based on the SSA; (2) a claim based on the due process clause of the Fifth Amendment; and (3) claims based on the APA. Since the Magistrate Judge found the Secretary's procedures violated the SSA, he did not reach the issues of whether they also violated the due process clause and the APA. As we agree with the Magistrate Judge that the procedures violate the SSA, we likewise need not reach the due process and APA claims.

The SSA claims essentially say that 20 C.F.R. § 416.420 and POMS § SI 02005.060 violate Congress' scheme for determining SSI benefits as found in 42 U.S.C. § 1382(c) because they indiscriminately base the first three months' benefit levels on nonrecurring income received only in the first month. According to plaintiffs, this violates three provisions of the SSA. First, it violates the language of § 1382(c)(1) which requires benefit levels for a given month to be determined "for such month on the basis of income and other characteristics in the first or, if the Secretary so determines, second month preceding such month."[2] Plaintiffs also claim it violates the language of § 1382(c)(2) which directs that:

> the amount of [the] benefit for the [first month of eligibility] shall (A) be determined on the basis of the income of the individual ... and other relevant circumstances in such month....

42 U.S.C. § 1382(c)(2). Finally plaintiffs claim the RMA procedures for the first three months violate § 1382(c)(4)(A) which directs that:

> [n]otwithstanding paragraph (3), if the Secretary determines that reliable information is currently available with respect to the income and other circumstances of an individual for a month ... the benefit amount of such individual under this subchapter for such month may be determined on the basis of such information.

42 U.S.C. § 1382(c)(4)(A). The Magistrate Judge's Report bifurcated its analysis by considering first the language of sections 1382(c)(1) and 1382(c)(2) and second the claims under section 1382(c)(4). We shall do so as well.

### A. The Statutory Scheme Detailed in Sections 1382(c)(1) and 1382(c)(2)

 The question before us is whether the Secretary, in POMS § SI 02005.060 and 20 C.F.R. § 416.420, is following the SSA in his regulations which base the first three months of benefit levels on nonrecurring income received in only the first month of eligibility. The method of review is clear: first we must determine "whether Congress has spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The Magistrate Judge found that the intent of the statute was clear. This court agrees with that finding. The purpose of the statute is to provide SSI benefits to qualified claimants at a set level. § 1382(b)[3]. The exception

---

1. The only factual dispute between the parties appears to center on the numerosity of the proposed class. *See* page 1276, *infra*. This dispute, however, is procedural, not substantive, and thus does not affect the merits of the case and the motion for summary judgment. No other facts appear to be in dispute.

2. The Secretary has opted to use the second previous month for determining benefits except in the case of the second month of eligibility,

where he uses the first previous month, which is also the first month of eligibility.

3. 42 U.S.C. § 1382(b) reads, in pertinent part:

> (1) The benefit under this subchapter for an individual who does not have an eligible spouse shall be payable at the rate of ... reduced by the amount of income, not excluded pursuant to section 1382a(b) of this title, of such individual.

to providing this level of benefits is where the Secretary finds that the recipient is receiving other income, in which case the Secretary reduces the benefit level. 42 U.S.C. § 1382(b).

Within this framework it is clear that Congress must have intended that one "relevant circumstance" and an "other characteristic" that the Secretary must consider is whether specific income received in a beneficiary's first month of eligibility, on which the Secretary reduces benefit levels for the first three months, is of a nonrecurring nature. For if the income is nonrecurring, the use of it to lower three months of benefit levels violates the Congressional purpose of seeing that SSI recipients receive the prescribed level of benefits reduced only by actual outside income to the recipient. This is also consistent with the Magistrate Judge's view that "the only reasonable explanation for Congress' inclusion of 'other circumstances' language in those subsections is to allow the Secretary to tailor benefits to accurately reflect the applicant's actual financial situation." Report at 21.

It is noted, however, that the Secretary does have discretion in the implementation of the statute. Certainly, the Secretary should be able to enact procedures that assure to some degree that the income claimed as nonrecurring in the first month of eligibility actually is nonrecurring.[4] Furthermore, clearly RMA procedures permit the Secretary to use the nonrecurring income as a basis for lowering the benefit level for any one of the first three months, so long as the income is only counted once, and the Secretary surely may determine

the most appropriate and efficient procedures for so doing.

The Secretary makes much of the fact that Congress reenacted and amended subsection 1382(c) without amending the language in issue, and thus, in his theory, implicitly adopted the Secretary's interpretation of this language. Tax Equity & Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 181(a), 1982 U.S.Code Cong. & Admin.News (96 Stat.) 404; Omnibus Budget Reconciliation Act of 1987 ("OBRA"), Pub.L. No. 100–203, § 9106, 1987 U.S.Code Cong. & Admin.News (101 Stat.) 1330–301. First, as will be discussed in detail below, the Secretary's method of implementing Section 1382(c), which fails to consider nonrecurring income as a relevant circumstance, was not easy to discern from the published reports. Therefore, it is not clear that Congress understood the Secretary's method of implementing this particular language. *See e.g., Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 895 n. 19, 107 L.Ed.2d 967 (1990) (Congress probably did not know the Secretary's approach and thus could not have approved it by reenactment.)

Second, the amendments were not closely related to the "other relevant circumstances" language, and thus do not raise any inference Congress thought about the "other relevant circumstance" language implementation. It is true that Congress specifically added one exception from RMA for assistance payment from certain other SSA programs.

[A]ny income which is paid to ... an individual in any month pursuant to ... (a list of kinds of public aid) ... shall be taken into account in determining the

---

(2) The benefit under this subchapter for an individual who has an eligible spouse shall be payable at the rate of ... reduced by the amount of income, not excluded pursuant to section 1382a(b) of this title, of such individual and spouse.

**4.** The Secretary argues forcefully that the purpose of RMA accounting was to get away from the system of prospective accounting wherein the Secretary had to recalculate recipients' benefits after the fact. To permit recipients to look to their second month income to determine whether the income in the first month was

nonrecurring would force the Secretary to make retrospective adjustments and turn the accounting system back into a prospective system. Secretary's Objections to the Magistrate's Report, December 4, 1990, at 36–37. However, for income that the Secretary can reasonably learn is of a nonrecurring nature, such as in-kind income from incarceration, severance pay, and even lottery winnings, the situation is changed. Determination of whether this income was nonrecurring could be made at the time the initial benefits were calculated.

amount of the benefit under this subchapter of this individual . . . only for that month, and shall not be taken into account in determining the amount of the benefit for any other month.

42 U.S.C. § 1382(c)(5). OBRA, Pub.L. No. 100–203, § 9106, 1987 U.S.Code Cong. & Admin.News (101 Stat.) 1330–301. From this, one could argue that by only mentioning some types of income to exempt from RMA, Congress did not mean to exempt any other income from the dictates of RMA other than those left to the Secretary's discretion. The flaw with this is that it assumes Congress necessarily understood the underlying scheme and added the amendment in response to it. However, one can also argue that this amendment is best seen as an attempt by Congress to dovetail different assistance programs consistent with Congress's overall aim, as expressed in 1382(b), of providing that benefits be provided at a certain level to all recipients, and that this was done without an examination of the rest of the statute, including the underlying methods used by the Secretary to calculate "other relevant circumstances."

Therefore, we agree with the Magistrate Judge that on the basis of the plain meaning of the statute, the Secretary exceeded his discretion under the SSA by "refusing to consider as an 'other relevant circumstance' the nonrecurring nature of plaintiffs' first month's income in determining benefit amounts to be paid the first three months of eligibility." Report at 25.

B. The Reliable Information Language of Section 1382(c)(4)

█ The Magistrate Judge's report also considers the "Reliable Information" issue in § 1382(c)(4). As noted above, this section permits the Secretary to base income determinations on reliable information "if the Secretary determines [such] is currently available ..." 42 U.S.C. § 1382(c)(4). This section of the statute clearly involves discretionary activity by the Secretary. Therefore, the Secretary is under no duty on behalf of recipients to implement this section. For this reason, the Magistrate Judge was correct in finding that in the present case, where the Secretary has not promulgated any regulations pursuant to 42 U.S.C. § 1382(c)(4), plaintiffs have not demonstrated an injury in fact and are without standing.

IV. *Section 405(g) Issues*

Having determined that at least the named plaintiffs should succeed on their claim that the Secretary has been misapplying the SSA, we now turn to the question of the unnamed putative class of plaintiffs. The Magistrate Judge certified a class consisting of:

All SSI recipients who have resided in the State of Vermont who have had eligibility for SSI for any month since April, 1982 determined pursuant to Defendant's policy of retrospective monthly accounting (RMA) under 42 U.S.C. § 1382(c)(2) and Program Operation Manual § SI 02005.060 or 24 C.F.R. § 416.420, or who will have their eligibility for SSI so determined in the future and, as a consequence of such determination, have had or will have nonrecurring income in their first month of eligibility after an initial application or period of ineligibility used as the basis for their SSI benefit computation for the first three months of eligibility.

Report at 5.

█ It is clear that 42 U.S.C. § 405(g) is the appropriate jurisdictional provision for these SSI recipients to use to bring a suit against the Secretary.[5] However, the Secretary disputes the Magistrate Judge's finding that the requirements of § 405(g) were satisfied by all the class members in this case. Since a federal court must determine that it has jurisdiction over every member of the class in a class action, *Zahn*

---

**5.** In pertinent part, section 405(g) reads:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

42 U.S.C. § 405(g).

v. International Paper Co., 414 U.S. 291, 300, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973), we must consider whether all of the class members mentioned above meet the minimum requirements of § 405(g).

The central jurisdictional requirement of § 405(g) is that there can be no recourse to the district court until there has been a final decision by the Secretary. 42 U.S.C. § 405(g). The Supreme Court has stated that this final decision requirement has two elements: first, plaintiffs must have presented claims to the Secretary, and second, plaintiffs must have exhausted all administrative remedies prescribed by the Secretary. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986). However, in appropriate circumstances, the second element, exhaustion, is waivable either by the Secretary or by the court. Section 405(g) also requires that all appeals to federal courts be made within 60 days of the Secretary's final decision. However, this time limit in some circumstances can be equitably tolled. These three requirements will be considered in turn.

### A. Presentment of Claims

■ The Magistrate Judge found that all class members had satisfied the requirement that they present their claims to the Secretary by filing initial claims for benefits. In this determination, he relied on *State of New York v. Sullivan,* 906 F.2d 910, 917 (2d Cir.1990). *See also City of New York v. Heckler,* 742 F.2d 729, 735 (2d Cir.1984). These cases stand for the proposition that when benefits are denied, the presentment requirement is satisfied by filing an initial claim. In the present case, plaintiffs assert their benefits are too low and therefore have been partially denied. We agree and hold plaintiffs have satisfied the presentment requirement. *See also Linquist v. Bowen,* 813 F.2d 884, 887 (8th Cir.1987).

### B. Exhaustion of Remedies

■ The second issue to address regarding this court's jurisdiction over the pro-

posed class under 42 U.S.C. § 405(g) is the requirement that all members of the class exhaust their administrative remedies. *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900. The normal process for disputing an underpayment of benefits involves a four-step procedure consisting of an initial determination, a request for a reconsideration, a request for a hearing before an ALJ, which may or may not be granted, and then a request that the Appeals Council review the ALJ's decision or dismissal. *See* 20 C.F.R. § 416.1400.

Clearly, the record does not indicate that any class members, other than the named plaintiffs, Farley and Devoid, have exhausted their administrative remedies. However, the exhaustion requirement may be waived by a court "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment (concerning whether to waive exhaustion) is inappropriate." *Eldridge,* 96 S.Ct. at 900. This analysis is effectively an interest balancing analysis, considering: the benefits for the Secretary in having plaintiffs exhaust their administrative remedies; the harm to the plaintiffs in requiring exhaustion; and whether the issue being litigated is collateral to the issue for which the administrative channels are set up in the first place, namely a recipient's claim for benefits. *Id; State of New York,* 906 F.2d at 918; *White v. Sullivan,* Civ. No. 89–335, slip op. at 7, 1991 WL 315124 (D.Vt., October 15, 1991) (Coffrin, J.).

■ The Magistrate Judge correctly determined that waiver was appropriate in this case. First, the Secretary receives no benefit from requiring all the potential plaintiffs in this case to exhaust their remedies. Once the Secretary has decided that his interpretation of the law is immutable and correct, an action in district court does not prematurely interfere with agency processes. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522, (1975); *City of New York,* 106 S.Ct. at 2032. Fur-

thermore, given the Secretary's position, all administrative appeals of this issue are clearly and completely futile. *Livermore v. Heckler,* 743 F.2d 1396 (9th Cir.1984) (citing *Eldridge* 96 S.Ct. at 900). Second, the nature of SSI is that all the recipients are physically or mentally disabled. Therefore, decreases to their benefits below their minimum monthly needs may well cause irreparable injury which could be avoided if the claimants were permitted to waive the exhaustion requirement.

Third, the issue being litigated in the instant case is collateral to the normal administrative claim that the Secretary has deviated from his guidelines because the plaintiffs here simply "challeng[e] the Secretary's failure to follow the applicable statutory mandate." Report at 8 (citing *State of New York,* 906 F.2d at 918 (citing *City of New York* 476 U.S. at 483, 106 S.Ct. at 2032)); *see also White,* slip op. at 10 (claim is collateral if plaintiffs simply ask courts to ensure Secretary is applying valid standards). While it is true that if plaintiffs are successful in this litigation, they might receive higher benefits on remand to the Secretary, *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984), this alone should not suffice to link the important statutory interpretational issue under discussion and the collateral question of whether some plaintiffs will benefit from the litigation. Therefore, we agree with the Magistrate Judge that this is an appropriate case for waiver of the requirement that plaintiffs exhaust their administrative remedies. Report at page 8.

## C. 60–day Statute of Limitations

■ In addition to a final decision from the Secretary, section 405(g) also requires that a claimant bring suit in federal court within 60 days of a final decision by the Secretary. 42 U.S.C. § 405(g). However, the Supreme Court has found that this requirement is not jurisdictional in nature, but instead was intended by Congress to act as a statute of limitations which may be equitably tolled in certain circumstances. *City of New York,* 106 S.Ct. at 2029.

The Magistrate Judge correctly determined that this case is appropriate for equitable tolling. Report at 9–10. The Second Circuit has noted that "equitable tolling of the limitations period found in Section 405(g) is not infrequently appropriate, as Congress intended to be 'unusually protective' of claimants in this area." *Canales v. Sullivan,* 936 F.2d 755, 758 (2d Cir.1991) (citing *State of New York,* 906 F.2d at 917). One example of when equitable tolling is appropriate is when the government's misconduct is intentionally secretive, or has the effect of not putting plaintiffs on notice about the scope of their rights. *State of New York,* 906 F.2d at 917.

In the present circumstances, the plaintiffs complain that the Secretary failed to implement pertinent language of a statutory provision. They claim this was secretive misconduct. The Secretary claims that publication in the Federal Register of 20 C.F.R. § 416.420 [6] furnished recipients with complete and full notice of the Secretary's policies, and that there was no secretive misconduct on his part.

However, there are several reasons why the Secretary's actions did not put recipients on notice of the government's failure to fully implement the statute (and thus was, to a degree, hidden). First, as the Magistrate Judge noted, and the Secretary agrees in his brief, 20 C.F.R. § 416.420 is merely a codification of parts of 42 U.S.C. § 1382(c). Report at 9, Secretary's Objections to the Magistrate's Report, December 4, 1990, at 22. The disclaimer in the Federal Register that this code section merely represents a codification would lead an SSI recipient reading section 416.420 to presume that there were other regulations elsewhere, possibly codified or possibly not, which were set up to implement the rest of

---

**6.** Section 416.420 states that benefit levels for the first three months of eligibility are all calcu-

lated from income in the first month.

the regulatory process envisioned by § 1382(c), including the language relating to "other relevant circumstances" and "other characteristics." This lack of other regulations is hidden.

Second, the Secretary's regulations extensively detail many different kinds of income and require prompt reporting about future changes in income. *See* 20 C.F.R. Ch. III, Sub parts G and K. Yet it is reasonable for a recipient to presume that the Secretary uses all the information he asks for and receives concerning a recipient's income.

Third, we note in passing that it is not necessary to consider the extent of the notice provided by POMS § SI 02005.060 since it was not published in the Federal Register. The Second Circuit has determined that for the purposes of giving notice to potential plaintiffs, agencies must at least publish their policies in the Federal Register. *State of New York*, 906 F.2d at 917; *White*, slip op. at 16.

Another reason for permitting equitable tolling in this case is the inability of the recipients to recognize they have been denied benefits within the 60 day limit. The awards letters to SSI recipients do not even put them on notice that they have partially been denied benefits. This scheme obscures from recipients the fact that the Secretary is deducting income from the first month in the first three months regardless of whether or not the income was nonrecurring. Therefore, this case falls within the category of occasional cases "where the equities in favor of tolling are 'so great that deference to the agency's judgment is inappropriate'". *Canales*, 936 F.2d at 758 (citing *State of New York*). *See also Gould v. Sullivan*, 131 F.R.D. 108, 113 (S.D.Ohio 1989). For these reasons, we find that equitable tolling is appropriate in the present case.

## IV. *Class Certification Issues*

We turn to the issue of whether this class should be certified. In general, the Federal Rules of Civil Procedure have four requirements for class certification, but the Secretary only disputes whether the plaintiffs have satisfied their burden of meeting the numerosity requirement of Fed. R.Civ.P. 23.

 To be certified, a class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Certification is within the broad discretion of the district court. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988). It is clear that neither party knows precisely how many members satisfy the eligibility requirements of the proposed class. However, unrebutted statistical evidence can be used to present a fact in litigation. *Sheehan v. Purolator, Inc.*, 839 F.2d 99, 102 (2d Cir.1988).

In this case, very roughly speaking, the average number of persons on SSI was 103 per month and the average absolute rate of change in the number of recipients from one month to the next was 17, or about 18% per month. Over the 5½ year period for which the Secretary did provide information, there were *at the very least* 534 persons who experienced a first month of eligibility or re-eligibility.[7] By simple extrapolation, in the last 9½ years, at the very least there have been 920 new recipients. We have no difficulty finding that at least 50 of the eligibility determinations would involve persons with nonrecurring income in the first month which was used for calculating the first three months benefits under POMS § SI 02005.060 and 20 C.F.R. § 416.420. Therefore the class is sufficiently numerous that joinder is impracticable.

Furthermore, as the Magistrate Judge noted, finding every present and past SSI recipient entitled to relief under this analysis is quite impracticable, particularly as the Secretary has been unable to give information on how many of them exist, let alone who they are.

---

**7.** This figure is arrived at by looking at only the months for which there was a net increase in SSI recipients and summing the total of all such net increases.

In this case, the plaintiffs have presented more than "a bare allegation of numerosity." *Westcott v. Califano*, 460 F.Supp. 737, 744 (D.Mass.1978). In addition, the Secretary's argument that insufficient potential class members have standing since plaintiffs are unable to allege injury to particular plaintiffs is flawed. This court has not found that *all* SSI recipients in Vermont are members of the class, but rather only those whom the Secretary had reason to know had nonrecurring income in the first month of their eligibility. Furthermore, the particular persons included in this court's description of the class were surely injured by the partial denial of their benefits in the second and third months and therefore have standing. We conclude that the class is sufficiently numerous to be certified.

## CONCLUSION

For the reasons stated above, the Magistrate Judge's recommendations are ADOPTED. In particular:

(1) plaintiffs' motion to certify the class is GRANTED;

(2) plaintiffs' request for determination of all persons who had nonrecurring income in the first month of eligibility for SSI is GRANTED;

(2) plaintiffs' motion for summary judgment on the "other relevant circumstances" claim is GRANTED and REMANDED to the Secretary for determination consistent with this Order;

(3) plaintiffs' substantive and procedural claims regarding the "reliable information" exception are DISMISSED;

(4) plaintiffs' due process and APA claims are DISMISSED as moot; and

(5) the Secretary's motion for judgment on the pleadings is DENIED.

The Clerk of Court shall enter judgment consistent with this Opinion and Order.